# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

## DILLON v. HAWKINS.

### Opinion delivered January 10, 1921.

1. DISMISSAL AND NONSUIT—EFFECT ON COUNTERCLAIM. — Under Kirby's Dig., § 6231, defendants had a right to proceed to trial on their counterclaim, although plaintiff had taken a nonsuit.

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT ON COUNTERCLAIM.—A verdict awarding damages on a counterclaim should not be disturbed on appeal if there is any evidence to sustain it under any view of the law applicable to the case.

3. SALES—VERDICT SUSTAINED BY EVIDENCE.—Evidence *held* to sustain verdict for damages on buyer's counterclaim after plaintiff had taken a nonsuit.

4. DISMISSAL AND NONSUIT—EFFECT OF TAKING NONSUIT.—Where plaintiff in an action on certain notes elected to take a nonsuit and not to defend a counterclaim filed by defendants, the court had no jurisdiction to render judgment in his favor offsetting the counterclaim by the amount of the notes.

5. NEW TRIAL—EFFECT OF TAKING NONSUIT.—Where plaintiff took a nonsuit and declined to reply to a counterclaim, and thereupon defendant had verdict and judgment on the counterclaim, plaintiff can not, by motion for new trial, bring back into the record matters which passed out of it when he took a nonsuit.

6. ATTORNEY AND CLIENT—ATTORNEY'S KNOWLEDGE OF COURT'S ORDERS.—A litigant is charged with knowledge possessed by his attorney in regard to the orders of the court relating to the trial of causes, though the attorney failed to communicate the knowledge to him.

7. APPEAL AND ERROR—REMITTITUR OF EXCESS.—Where the plaintiff took a nonsuit, but defendant introduced testimony to sustain his counterclaim showing damages in excess of the amount prayed for, without amending the prayer, and a verdict was rendered for the full amount so proved, the prayer of the complaint will not be treated as amended to conform to the proof, but a remittitur of the excess of the judgment will be ordered.

Appeal from Poinsett Circuit Court, First District; *R. H. Dudley*, Judge; affirmed.

*J. F. Gautney*, for appellant.

1. The verdict is so excessive as to show it was the result of passion, prejudice, recklessness or mistake. 9 Ark. 405; 25 *Id*. 49; 26 *Id*. 309; 39 *Id*. 511; 21 S. W. 36; 92 Ark. 345; 102 *Id*. 603.

2. It was error to give instruction No. 1, stating that the evidence was undisputed, etc. 93 Ark. 277.

3. The court erred in overruling the motion for new trial. The evidence on behalf of Dillon on the motion was not disputed by Seeley. A complete defense was offered and not denied. The trial court having found that the verdict was excessive should have set it aside in its entirety. 96 Ark. 379, 383; 126 *Id*. 427.

4. Dillon offered a complete defense to every item set up in the cross-complaint.

5. Dillon exercised due diligence.

*Mardis & Mardis*, for appellees.

1. The verdict is not so excessive as to show passion or prejudice, etc. The evidence showed that defendants were entitled to damages in the sum of $27,-481. It was in strict conformity with the law and the evidence. 102 Ark. 603.

2. There was no error in giving instruction No. 1. The evidence was undisputed, and no objection was made to it. 131 Ark. 121; 135 *Id*. 602.

3. The trial court had the right to reduce the judgment without setting it aside in its entirety. 107 Ark. 422; 133 *Id*. 223.

WOOD, J. The appellant instituted this suit in March, 1920, in the Poinsett Circuit Court against the appellees. He alleged that he sold and delivered to the appellees one California Heavy Style Rig with drill stems for the sum of $22,000, $10,000 of which was paid in cash and the balance evidenced by three promissory notes of $4,000 each, payable in thirty, sixty, and ninety days, which

notes were past due and upaid. The appellees answered on May 10, 1920, and denied all material allegations of the complaint. They filed a counterclaim in which they alleged that at the time they purchased the drilling outfit from the appellant they had a contract to drill an oil well in the State of Louisiana; that appellant failed to deliver the machinery according to contract, which caused the appellees to forfeit their contract in Louisiana to their damage in the sum of $10,000; that they were damaged in the further sum of $981 for freight and demurrage and a further damage of $500 on account of having to remove the machinery from Shreveport, Louisiana, to Harrisburg, Arkansas; that one of the appellees, Seeley, since the purchase, in order to put the rig in condition for use in drilling, had purchased additional machinery in the sum of $6,000 and that it would require the expenditure of $6,500 more to make the rig complete as per contract. The record shows that on May 10, 1920, by special request the court set the cause for a hearing on May 14th. On the latter date the cause was called for trial. After the jury was impaneled, one of the counsel for the plaintiff below, appellant here, announced that he desired to take a nonsuit. The court thereupon informed counsel that the defendants below, appellees here, had filed an answer and cross-complaint in which they were asking for affirmative relief against the plaintiff, and that his action in dismissing the complaint would not interfere with defendants' right to prosecute their cross-complaint. The court further informed counsel for the plaintiff that he would be given time to file a reply to the cross-complaint and prepare for trial. Counsel for plaintiff thereupon announced that there was no service on the plaintiff (defendant in the cross-complaint), and that they would not do anything to enter plaintiff's appearance. Thereupon, counsel for the defendants, cross-complainants, announced that they were ready to offer evidence on the counterclaim set up in the cross-complaint, which was done.

It is unnecessary to set forth, in detail, the testimony tending to prove the damages alleged in the cross-complaint. The testimony established the contract of sale as set up in the complaint and tended to show that, on account of the failure of appellant to deliver the drilling outfit as per the terms of the contract, the appellees were damaged in the sum of $10,000 in the loss of profits on a certain contract to drill an oil well in Louisiana, and that on account of the delay appellees were required to pay a demurrage of $981 and additional freight bill of $500; that there was a difference of $16,000 between the drilling outfit which they had purchased of the appellant and the outfit which was delivered to them under their purchase from the appellant. In other words, the drilling outfit that they actually got was of the value of about $6,000.

No exceptions were saved on the trial of the cross-complaint to any of the rulings of the court in admitting evidence or in giving instructions. The jury returned a verdict in favor of the appellees in the sum of $27,481.

The appellant filed a motion for a new trial containing various assignments of error and among them that the verdict of the jury was contrary to the law and the evidence. These are the only assignments that we can consider, for there were no objections or exceptions during the progress of the trial to the rulings of the court which were assigned as error in the motion for a new trial. After hearing the evidence that was adduced on motion for a new trial, the court required a remittitur to be entered in the sum of $10,500, which was entered by the appellees. Thereupon, the court overruled the motion for a new trial and entered a judgment in favor of the appellees in the sum of $16,981, from which is this appeal.

Under section 6231 of Kirby's Digest, the appellees had the right to proceed to the trial of their counterclaim, although appellant had taken a nonsuit on the notes. The record shows that the court expressly advised appellant that he had the right to file a reply or an-

swer to the counterclaim of appellees and offered to give appellant time to do so and to prepare for a trial on the counterclaim. But the appellant announced that he did not care to file any further pleadings; that there was no service on the appellant, and that he did not wish to do anything to enter his appearance. It appears, therefore, that counsel for appellant misapprehended the law and allowed the trial on the counterclaim to proceed as though he were not a party to these proceedings. In its instructions the court told the jury that the only issue for them to determine was as to the amount of the damages. "If there is any evidence to sustain the verdict under any view of the law applicable to the case, then it should not be disturbed." *Chicago Crayon Co.* v. *Choate,* 102 Ark. 603-605.

Appellee Seeley testified that appellant's delay in delivering the drill rig according to contract caused the appellees to pay $981 demurrage, and that there was a difference between the contract price of the drill rig purchased by the appellees from the appellant and the outfit that was actually delivered to the appellees of $16,000. The testimony was therefore sufficient to sustain the verdict and the judgment for $16,981. After the appellant took the nonsuit and deliberately elected not to defend the action for damages, nor to ask for judgment for the balance of the purchase money, the court had no jurisdiction to render judgment in his favor in this proceeding offsetting the counterclaim by the amount of the notes. Appellant, by his conduct, allowed the cause on the counterclaim to proceed to judgment as an entirely independent action, and he could not by his motion for a new trial bring into this record matters which passed out when he took his nonsuit and elected not to challenge the allegations of the counterclaim. The judgment is correct, and it is therefore affirmed.

HART, J., dissenting.

WOOD, J. (on rehearing). A petition for rehearing has been filed, in which counsel insist that the testimony offered in support of the motion for a new trial was such

that this court should hold that the court below abused its discretion in refusing to grant the prayer for a new trial. It is conceded that the testimony offered at the trial before the jury, and which was heard and passed upon by the jury, is legally sufficient to support the verdict returned. But it is insisted that a showing was made upon which this court should find that the court below abused its discretion in refusing to grant the new trial.

In support of this contention, it is shown that Dillon had not expected to try the case at that term, and had directed his regular attorney, who resided in Texas, to take a nonsuit, and that attorney went to Harrisburg expecting to take that action; but on his arrival there he found that a jury had been empaneled to try the case. This was shown to have been a surprise to the Texas attorney as well as to Dillon; but the local attorney representing Dillon had had the case set for trial and had made up the jury to try the case, when a recess was taken until the arrival of the train on which Dillon and his regular attorney were expected.

No question is made about the authority of the local attorney to represent Dillon, nor is his good faith questioned. But there was a misapprehension of the law on the part of Dillon's attorneys, which resulted in their failure to take advantage of the court's offer to give them time to prepare for trial.

Ordinarily litigants appear by attorneys, who act for them. Litigants are, therefore, necessarily charged with any knowledge possessed by their attorneys in regard to the orders of the court relating to the trial of the causes, and Dillon must, therefore, be charged with the knowledge of his local attorney, although that attorney had failed to communicate the knowledge to him.

It does appear, however, that in the counterclaim there was a prayer for a judgment for only $11,981, and that even after a remittitur of $10,500 had been ordered, judgment was rendered for $16,981, which was $5,000 in excess of the sum sued for. This excess can not be per-

mitted to stand, and the judgment here must be reduced by that amount. The counterclaim was never amended. Permission was neither asked nor granted to amend, and we can not say that the pleadings may be treated as amended to conform to the testimony, nor that the testimony was offered without objection. *American Bonding Co.* v. *Morris,* 104 Ark. 276; *Patrick* v. *Whitely,* 75 Ark. 465; *McMurray* v. *Boyd,* 58 Ark. 504; *S. R. Morgan & Co.* v. *Pace,* 145 Ark. 273.

Dillon's attorneys had assumed the mistaken attitude of not being before the court for any purpose. The attorneys declined to take any action which would have the effect of entering their client's appearance. As we have said, they were mistaken in this, but it can not be said that there was either consent or failure to object, because the whole conduct of the attorneys was one of protest. The court should not, therefore, have rendered judgment in excess of the amount claimed in the counterclaim, and the judgment will be reversed unless appellee shall within fifteen days consent that the judgment be reduced to $11,981.