ROWELL v. ROWELL.

Opinion delivered November 9, 1931.

*J. F. O'Melia* and *Cravens & Cravens,* for appellant.
*Hardin & Barton,* for appellee.

BUTLER, J. The case now here began in this way. Ernest Rowell, the appellant, and Hazel Rowell, the ap-

pellee, were married in June, 1929, and separated about the first of the year 1930. The appellant brought suit a short time after the separation to annul the marriage on the ground of fraud practiced by the appellee in its procurement. The appellee answered denying the allegations of fraud, and, cross-complaining, prayed for divorce on the ground of cruel and inhuman treatment, and for alimony. A reply was filed to the cross-complaint denying its allegations, and upon the issues thus joined evidence was taken, and upon final hearing a decree was entered dismissing the complaint for want of equity and granting the prayer of the cross-complaint decreeing divorce and adjudging alimony. On appeal from that decree, its correctness is challenged for four reasons.

■ It is contended that the court erred in refusing to permit appellant to take a nonsuit on the cause of action for annulment. On this question, the record discloses that the appellee was the first to offer testimony which tended to support the allegations of her cross-complaint, and at the close of this testimony the appellant moved to take a nonsuit, which motion was overruled, to which he duly excepted. Appellant contends here that he had the right to control his case until final submission by virtue of the statute (Crawford & Moses' Digest, § 1261) and that this right is not to be denied. Ordinarily this is true, but not always.

In equity proceedings, the complainant cannot as a matter of right dismiss his complaint after a cross-complaint has been filed alleging grounds for, and praying, affirmative relief. *Allen* v. *Allen,* 14 Ark. 666; *Pickett* v. *Ferguson,* 45 Ark. 177, 55 Am. Rep. 545. "Plaintiff may dismiss any claim where such dismissal will not prejudicially affect the interest of defendant, but he will not be permitted to dismiss, to discontinue, or to take a nonsuit, when by so doing defendant's rights will be prejudiced or he will be deprived of any just defense." 18 C. J. § 31, p. 1158. "Where an answer or a plea has been filed showing defendant to be entitled to, and praying

for, affirmative relief, plaintiff will be precluded from dismissing his action on his own motion. The consent of the adverse party is necessary in such case." *Id.* § 32.

It will be seen in the discussion of the second assignment of error that the facts alleged as the basis for appellant's complaint are pertinent to the issue raised by the cross-complaint and the reply thereto. Its dismissal might therefore prejudice the rights of the cross-complainant. Then, too, the original plaintiff was attempting to accomplish, though by a different proceeding, the same result as that sought by the cross-complainant, namely, the dissolution of the marriage bond. It was within the sound discretion of the chancellor at this stage of the proceedings to grant or refuse the motion, and his action will not be reviewed, unless that discretion was abused. This is not shown to be the case.

■ It is next insisted that upon the merits of the case the preponderance of the evidence tended to establish the allegations of appellant's complaint, and that the court erred in dismissing the same for want of equity. The alleged fraudulent conduct and misrepresentation of the appellee upon which the appellant grounded his cause of action and to which he testified, was that the appellee induced him to believe by statements made by her to him in May, 1929, that she was with child by him as the result of an act of sexual intercourse on January 8th preceding, when in fact she knew her condition was caused by an act of like nature with another man; that he relied on the false statements. That appellee gave birth to a normally developed child on December 6th, following, which was light in color and had red kinky hair, and that appellant's color was "not so light." In addition to his own testimony he offered several of his female relations who testified to statements they said the appellee made on different occasions to the effect that she had had before marriage, sexual intercourse with appellant but once, and that the date of that occurrence was January 8th. And a physician told of a statement of appellee to him, in his professional capacity,

that she had had menstrual periods as late as March 7th. It was appellant's contention that the child born December 6th was not his. As considerably more than 40 weeks had elapsed between January 8th and December 6th, appellant could not have been the father of the child, if it is true, as he says, he did not have carnal knowledge of appellee after January 8th, until their marriage. But appellant's testimony and that of his witnesses was contradicted by appellee.

She was a young colored school teacher, and had a school at Bentonville, and it is uncontradicted that he visited her there, driving a Ford sedan, and was in her company from time to time throughout the spring of 1929. She said, and the chancellor believed, that not only in January but on every occasion thereafter when she and her lover met they "did give to dalliance too much rein." If her testimony is true, and the trial judge found it so, then appellant might well have been the father of the child.

We find it unnecessary to detail the testimony relative to a specific act of incontinence said by appellee to have been enacted by her and appellant at Bentonville in March, or to discuss the circumstances which might tend to show its probability or improbability. It is sufficient to say that the chancellor, who had all the witnesses before him, was in a better position to judge of their credibility than are we, and, when all the circumstances are considered, we are unable to say that his decision was contrary to the preponderance of the testimony.

■ It is next insisted by the appellant that the court erred in adjudging alimony against him in the absence of any testimony on the question. We have examined the record, and fail to find any testimony to establish upon what basis the court fixed the sum of $35 per month as alimony, and are of the opinion that the appellant is correct in this contention. "Before a decree is passed or order for alimony is made, the court should be in possession, either by the admission of the parties or by testimony, of all the facts necessary to form a just de-

cision. The court is not bound by the technical rule applicable to controversies between litigants generally, but the decree or order for alimony cannot rest upon mere presumption or conjecture. All the facts upon which the decree or order is founded must be proved either by affidavits of the applicant and of other persons or by depositions taken upon notice to the other party, or by the oral testimony of the applicant unless, of course, the statute otherwise provides." 19 C. J., § 641, "Evidence," p. 290; *Shirey* v. *Shirey*, 87 Ark. 175, 112 S. W. 369.

■ Lastly, the contention is made that the court erred in ordering a writ of sequestration. This writ is warranted by § 3509 of Crawford & Moses' Digest, as follows: "The court may enforce the performance of any decree or order for alimony and maintenance by sequestration of the defendant's property, or that of his securities, or by such other lawful ways and means as are according to the rules and practice of the court." However, the order for sequestration ought not to be made without a showing of the nature and amount of the property and without proof of circumstances which would tend to show the intention of the defendant to make such disposition of it as might tend to hinder or delay the enforcement of the order of allowance for alimony.

Upon the consideration of the whole case, we are of the opinion that that part of the decree of the chancellor dismissing appellant's complaint for want of equity and granting appellee a divorce and allowing her alimony is warranted by the testimony, and is affirmed. But the order fixing the amount of the alimony and ordering the sequestration of the defendant's property was arbitrary as having been made without any evidence upon which the orders might be based, and in this respect the decree ought to be reversed and the cause remanded for further proceedings in conformity with the principles of equity and not inconsistent with this opinion. But, as there might have been some sound reason for the order of sequestration, that order is not to be considered as annulled, and shall continue in full force until the

appellee may have an opportunity to offer evidence warranting the same and until it is modified or vacated on a retrial of that issue.

Reversed as to amount of alimony and sequestration, and remanded for further proceedings.